1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

DEIRDRE DUNN, et al.,

          Plaintiffs,

    v.

SHC SERVICES, INC., et al.,

          Defendants.

Case No.  1:21-cv-00744-NONE-SAB

FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S REMAND MOTION AND REMANDING ACTION TO STATE COURT

(ECF Nos. 7, 15, 16, 18)

OBJECTIONS DUE WITHIN FOURTEEN DAYS

19
20
21
22
23
24
25
26
27
28

      Plaintiff Deirdre Dunn, who is represented by counsel, initiated this wage and hour class action lawsuit against Defendant SHC Service, Inc. in the Fresno County Superior Court. Defendant removed the action to this Court on May 6, 2021.  (ECF No. 1.)

      Currently before the Court is Plaintiff's motion to remand.  (ECF No. 7.)  The matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c)(7).  A hearing on the motions was held on October 27, 2021.  Counsel Sharon W. Lin appeared by videoconference for Plaintiff.  Counsel Benjamin M. Ostrander and Michael P. Roche, both appearing *pro hac vice*, appeared by videoconference for Defendant.  Having considered the moving, opposition and reply papers, the declarations and exhibits attached thereto, the arguments presented at the October 6, 2021 hearing, as well as the Court's file, the Court issues the

1

1  following findings and recommendations recommending granting Plaintiff's motion to remand

2  and remanding this action to state court.  See Local Rule 230(g).

### I.

### RELEVANT BACKGROUND

**A.    Plaintiff's Allegations**

Plaintiff alleges she was hired by Defendant, a staffing agency, to work at Mercy Hospital in Bakersfield, California as a non-exempt, hourly-paid traveling nurse for a seven-week assignment in which she would be working five 12-hour shifts per workweek.  Pursuant to the employment agreement, Defendant promised to pay Plaintiff $177.00/day as a "daily meals and lodging allowance."  However, if Plaintiff did not work her minimum 60 hours per week, Defendant would assess a $25 penalty for each hour not worked.  Defendant terminated Plaintiff before the completion of her assignment.

Plaintiff alleges Defendant had a policy/practice of adjusting its travel stipends, and not taking the stipends into account for purposes of calculating overtime or double-pay; of requiring its employees to complete client-specific training/orientation courses without compensating them for training time; of failing to permit its employees, including Plaintiff, to take lawful meal or rest breaks; and of failing to reimburse its employees for their necessary business-related expenses, such as rental cars.  As a result, Plaintiff claims Defendant has failed to compensate Plaintiff and the class for all hours worked.

**B.    Procedural Posture**

Plaintiff initiated this class action complaint on behalf of herself and the putative class in the Fresno County Superior Court on March 30, 2021, for various wage and hour claims.  (ECF No. 1-1.)  The Complaint asserts causes of action for: (1) failure to pay for all hours worked; (2) failure to pay minimum wage; (3) failure to pay overtime; (4) failure to authorize and/or permit meal breaks; (5) failure to authorize and/or permit rest breaks; (6) failure to reimburse necessary business expenses; (7) failure to furnish accurate wage statements; (8) waiting time penalties (failure to timely pay all wages due upon separation from employment); (9) unfair business practices in violation of California Business and Professions Code §§ 17200, et seq.; and (10)

1   penalties under California Labor Code § 210.

2       On May 5, 2021, Defendant answered the complaint.  (ECF No. 1-2.)  On May 6, 2021,

3   Defendant removed the action to this Court pursuant to 28 U.S.C.§§ 1332, 1441(a) and (b), and

4   1446.  (ECF No. 1.)

5       On May 17, 2021, Plaintiff filed the instant motion to remand.  (ECF No. 7.)  Defendant

6   filed an opposition on May 28, 2021, and Plaintiff replied on June 7, 2021.  (ECF Nos. 15, 16.)

7   On October 15, 2021, the District Judge referred the motion to remand to the undersigned for the

8   entry of findings and recommendations.  (ECF No. 17.)  On October 27, 2021, the parties

9   appeared for hearing on the matter.  (ECF No. 19.)

10                                      **II.**

11                              **LEGAL STANDARD**

12      Removal to federal court is authorized in "any civil action brought in a State court of

13  which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).

14  The Class Action Fairness Act of 2005 ("CAFA") grants original jurisdiction to federal district

15  courts over civil cases where: (1) the amount in controversy exceeds $5 million, exclusive of

16  interest and costs; (2) the aggregate number of proposed plaintiffs is 100 or greater; and (3) the

17  parties are minimally diverse.  28 U.S.C. §§ 1332(d)(2), (d)(5)(B).  Generally, such a case is

18  removable up to 30 days after the defendant "ascertain[s] that the action is removable under

19  CAFA . . . ."  Jordan v. Nationstar Mortgage LLC, 781 F.3d 1178, 1180 (9th Cir. 2015).

20      CAFA was designed by Congress specifically to allow removal of certain class actions to

21  federal court.  Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197 (9th Cir. 2015).

22  Congress's specific intent means there "is no antiremoval presumption attend[ing] cases invoking

23  CAFA . . . .", Dart Cherokee Basin Operating Co., LLC v. Owens (Dart Cherokee), 574 U.S. 81,

24  89 (2014) (citing S. Rep. No. 109-14, at 43 (2005)), given that such a presumption would cut

25  against "CAFA's primary objective: ensuring Federal court consideration of interstate cases of

26  national importance."  Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 595 (2013) (internal

27  citation omitted).

28      Nevertheless, removal still requires that the moving party carry "the burden of

3

1    establishing removal."   Abrego v. The Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006).

2    When, as here, the plaintiff has not specified an amount in controversy in the complaint, the

3    burden with respect to the amount-in-controversy requirement is satisfied through a good-faith

4    accounting of the amount in controversy.   Dart Cherokee, 574 U.S. at 87–88.  Indeed, the Ninth

5    Circuit has held that "a removing defendant is permitted to rely on a chain of reasoning that

6    includes assumptions."   Arias v. Residence Inn by Marriott, 936 F.3d 920, 925 (9th Cir. 2019)

7    (quoting Ibarra, 775 F.3d at 1199) (internal quotations omitted).  In short, a notice of removal

8    "need not contain evidentiary submissions."  Id. (quoting Dart Cherokee, 574 U.S. at 84).  Even

9    so, "assumptions cannot be pulled from thin air but need some reasonable ground underlying

10   them."  Id. (quoting Ibarra, 775 F.3d at 1199) (internal quotations omitted).  More specifically, a

11   reasonable assumption must be founded on the allegations of the complaint.   See id. (notice of

12   removal must include "a plausible allegation that the amount in controversy exceeds the

13   jurisdictional threshold.").

14        Further, a removing defendant's amount in controversy allegations only remain

15   undisturbed until "contested by the plaintiff or questioned by the court."  See Dart Cherokee, 574

16   U.S. at 87–88.  The plaintiff can contest the amount in controversy by making either a "facial" or

17   "factual" attack on the defendant's jurisdictional allegations.   Harris v. KM Indus., Inc., 980 F.3d

18   694, 699 (9th Cir. 2020) (citing Salter v. Quality Carriers, 974 F.3d 959, 964 (9th Cir. 2020)).  "A

19   'facial' attack accepts the truth of the [defendant's] allegations but asserts that they 'are

20   insufficient on their face to invoke federal jurisdiction.' "  Id. (citations and internal quotations

21   omitted).  A factual attack "contests the truth of the . . . allegations" themselves.   Id.  When a

22   plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of

23   the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold.

24   Ibarra, 775 F.3d at 1197 (9th Cir. 2015) (quoting Dart Cherokee, 574 U.S. at 88); see also 28

25   U.S.C. § 1446(c)(2)(B).

26        The preponderance burden requires the defendant to establish it is "more likely than not"

27   that the amount in controversy exceeds $5 million.   Sanchez v. Monumental Life Ins. Co., 102

28   F.3d 398, 404 (9th Cir. 1996) (internal quotation omitted).  As the Ninth Circuit has explained,

"the [preponderance] standard is not empty rhetoric: the preponderance burden 'forces the defendant to do more than [for example,] point to a state law that might allow the plaintiff to recover more than what is pled . . . .' " Guglielmino v. McKee Foods Corp., 506 F.3d 696, 704 (9th Cir. 2007) (O'Scannlain concurrence) (quoting DeAguilar v. Boeing Co., 47 F.3d 1404, 1411 (5th Cir. 1995)).  In discussing this well-established burden, the Supreme Court has explained that jurisdiction cannot be established "by mere averment," nor may the party asserting jurisdiction "be relieved of his burden by any formal procedure." McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936).  Rather, the defendant must produce "competent" evidence that establishes the actual amount in controversy exceeds the jurisdictional amount. Id.

The type of evidence to be submitted by the parties "includ[es] affidavits or declarations, or other summary-judgment-type evidence," which prevents the establishment of "removal jurisdiction by mere speculation and conjecture." Ibarra, 775 F.3d at 1197.  Both parties may submit evidence supporting the amount in controversy before the district court rules. Id.; see also Salter, 974 F.3d at 963.  A court may also consider supplemental evidence later proffered by the removing defendant which was not originally included in the removal notice. Cohn v. Petsmart, Inc., 281 F.3d 837, 840 n.1 (9th Cir. 2002) (district court properly considered evidence submitted in defendant's opposition to motion to remand, even though it was not included in the initial notice of removal).  Finally, the Ninth Circuit has held that, once the preponderance standard is triggered, if "the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." Ibarra, 775 F.3d at 1199.

## III.

## DISCUSSION

Plaintiff is challenging removal solely on the basis that Defendant's initial assumptions regarding the amount in controversy are implausible and that Defendant has not established the amount in controversy by a preponderance of the evidence.[1]  Plaintiff's challenge triggers the analysis described in Dart Cherokee and Ibarra, which the court performs below. Dart Cherokee,

---

[1] At the hearing on the motion, Plaintiff confirmed she does not dispute that the removal was timely filed nor that the minimal diversity of citizenship requirement is met, and the Court finds these other requirements of removal are satisfied.

5

574 U.S. at 88; Ibarra, 77 F.3d at 1197.

### A.   Defendant's Accounting of Amount in Controversy in Notice of Removal

In the removal notice, Defendant maintains Plaintiff's potential recoverable damages for the "partial class period" are at least $8,290,940.79.  (ECF No. 1-1 at 7.)  In support of its amount in controversy calculations, Defendant submits a single declaration from its Chief Information Officer, Rodney Ekstrom with no attachments.  (Decl. of Rodney Ekstrom in supp. of Def's Not. of Removal ("Ekstrom Decl."), ECF No. 1-4.)  Based on his "review of [Defendant's] business records," Mr. Ekstrom provides the following numerical values with respect to the putative class during the partial class period:

- The partial class period encompasses the period from December 1, 2018 to May 1, 2021;
- The putative class for this period consists of 796 members;
- The "separated employees subclass" (putative class members whose employment has ceased since December 1, 2018) consists of approximately 502 members;
- The approximate average hourly rate of pay for members of the putative class who worked during this period was $31.68;
- The approximate average overtime hourly rate of pay for members of the putative class who worked any overtime during this period was $54.37; and
- The aggregate number of total workweeks the putative class members worked during this period was 16,203.

(Ekstrom Decl.  ¶¶ 5, 6.)

Applying these figures and certain assumptions, Defendant calculated Plaintiffs' potential recoverable damages for the unpaid wages claims, meal period and rest period violation claims, and waiting time penalties claim,[2] to reach an estimated amount in controversy of at least $8,290,940.79.  Accepting all uncontested allegations in the notice of removal as true, Arias, 936 F.3d at 925, this estimated amount plainly exceeds the CAFA requirement of $5,000,000.

### B.   Plaintiff's Motion to Remand

In moving to remand, Plaintiff argues Defendant "fails to provide competent evidence" to support removal.  For example, in her moving papers, Plaintiff notes Defendant's removal is "solely supported by a single seven-paragraph declaration by its 'Chief Information Officer,'" and suggests this is insufficient to meet the summary-judgment-type evidence standard required under

---

[2] Defendant does not provide calculations of amounts in controversy pertaining to Plaintiff's remaining claims.

the preponderance of the evidence burden.  Following Defendant's submission of a substantially similar supplemental declaration (also seven paragraphs in length) with its oppositional papers, the reply brief expressly challenges the sufficiency of the declaration and the specific numerical values presented in the declarations (i.e., class size, average straight and overtime rates, and aggregate number of workweeks).

More significantly, Plaintiff's motion disputes Defendant's amount in controversy calculations on the basis that the "conservative assumptions" used in Defendant's calculations were "plucked out of thin air," not grounded in evidence, and not plausible based on the allegations in the complaint.  Consequently, Plaintiff argues Defendant's calculations must be set aside, that Defendant has failed to meet its initial burden of establishing the jurisdictional threshold amount in controversy under CAFA, and that the action should be remanded to state court.  (ECF No. 7-1.)

In opposition, Defendant argues Plaintiff has not adequately rebutted its amount in controversy estimate because she provides no evidence to do so.[3]  Moreover, Defendant argues its prior assumptions were reasonable, based on Plaintiff's allegations of "uniform and systematic" and "regular" violations that constituted "practices and policies" by Defendant.  Finally, Defendant maintains the original Ekstrom declaration submitted with Defendant's notice of removal constitutes sufficient evidence to establish the amount in controversy, but nevertheless produces a supplemental declaration from Mr. Ekstrom ("Ekstrom Decl. II," ECF No. 15-1) for further evidentiary support of its estimates.  (ECF No. 15.)

In the supplemental declaration, Mr. Ekstrom provides:

- A new "full class period" of March 30, 2017 to May 1, 2021;
- A new putative class size during the full class period of 1,306 employees;
- A new "separated employees subclass" (whose employment ceased since March 30, 2017) of 1,013 members;
- A revised average hourly pay rate of $30.21; and
- A new estimate for number of shifts that were at least six hours long, worked by the putative class during the full class period, in the aggregate of approximately 83,754

---

[3] Curiously, the opposition also devotes argument to the rule that evidence is only needed to establish jurisdiction when "the Plaintiff contests, or the court questions, the defendant's allegation."  (ECF No. 15 at 5 (citations and emphases omitted).)  While Defendant's recitation of black-letter law is not inaccurate, it seems plain that Plaintiff has contested Defendant's accounting by filing a motion to remand, therefore allegations no longer suffice and evidentiary support is required.

1   shifts.

2   (Ekstrom Decl. II ¶¶ 4–7.)  The Court addresses the parties' arguments in turn.

3       1.    Evidentiary Burden of Proof

4       As an initial matter, the Court will address the parties' apparent dispute regarding

5   evidentiary burdens.  Defendant argues that since Plaintiff has not presented rebuttal evidence or

6   otherwise provided evidence establishing an alternative amount in controversy, she fails to refute

7   Defendant's amount in controversy calculations.[4]  Plaintiff argues Defendant's burden-shifting

8   argument is unavailing because Defendant bears the burden of establishing removal jurisdiction

9   and it has not satisfied the preponderance of the evidence standard triggered by her challenge of

10  Defendant's estimates.  The Court agrees.

11      Defendant relies almost exclusively on Dart Cherokee for its argument that Plaintiff's

12  motion must be denied because she did not submit rebuttal evidence to adequately challenge its

13  amount in controversy estimates.  (See ECF No. 15 at 5–7.)  Specifically, Defendant places heavy

14  emphasis on the phrase "both sides" in Dart Cherokee that states, "[i]n the event that the plaintiff

15  does contest the defendant's allegations, both sides submit proof and the court decides, by a

16  preponderance of the evidence, whether the amount-in-controversy requirement has been

17  satisfied. . . ."  (Id. (citing Dart Cherokee, 574 U.S. at 82 (syllabus summarizing holding)).)

18  Based on this phrase, Defendant argues that Plaintiff's motion must be denied because it "fails to

19  provide any alternative estimates, any supporting evidence, or any evidence whatsoever." (Id. at

20  5–6 (emphasis in original).)   The Court, however, finds that Defendant's reliance on Dart

21  Cherokee in this context is unavailing.

22      A month after Dart Cherokee, the Ninth Circuit pointedly responded to a similar lack-of-

23

24  [4] In a footnote, Defendant appears to suggest Plaintiff additionally fails to establish the amount in controversy is less
    than $5 million because she "has neither offered to stipulate nor acknowledged that the amount in controversy does

25  not exceed $5,000,000 in this action."  (ECF No. 15 at 6 n.1 (emphasis omitted).)  However, the Ninth Circuit has
    rejected arguments of this kind, expressly holding that a "lead plaintiff of a putative class cannot reduce the amount

26  in controversy on behalf of absent class members . . . by stipulating that the amount in controversy fell below the
    jurisdictional minimum."  Rodriguez v. AT&T Mobility Services LLC, 728 F.3d at 981–82 (citing Standard Fire, 568

27  U.S. at 594–95); see also Arias, 936 F.3d at 928–29 (stipulation as to amount in controversy is "irrelevant to the
    CAFA analysis" and "when a class-action plaintiff . . . stipulates, prior to certification of the class, that he, and the
    class he seeks to represent, will not seek damages that exceed $5 million in total, the district court should ignore []

28  that stipulation when assessing the amount in controversy.") (internal quotations and citation omitted).

1   evidence argument made by an employer defendant in Ibarra, "the Supreme Court [in Dart

2   Cherokee] did not decide the procedure for each side to submit proof on remand," and reiterated

3   that the burden of establishing removal jurisdiction by a preponderance of the evidence remained

4   with the removing party.  Ibarra, 775 F.3d at 1199–1200.  Moreover, the Ninth Circuit indicated

5   that determination of "a reasonable procedure" in which "each side has a fair opportunity to

6   submit proof" remained within the province of the district courts.  Id. at 1200.[5]  Five years later,

7   the Ninth Circuit revisited this same lack-of-evidence argument to evaluate a plaintiff's attack on

8   CAFA jurisdictional allegations under the "facial" versus "factual" context.  See Salter, 974 F.3d

9   at 964–65 (discussing Leite v. Crane Co., 749 F.3d 1117 (9th Cir. 2014), and determining the

10  plaintiff had asserted a facial, not factual challenge).  Most recently, in Harris v. KM Industries,

11  the Ninth Circuit expressly held that "[a] factual attack . . . need only challenge the truth of the

12  defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions

13  on which they are based are not supported by evidence."  Harris, 980 F.3d 694, 700 (9th Cir.

14  2020) (citing Ibarra, 775 F.3d at 1199).

15         In Harris, as here, the plaintiff disputed the factual basis of one of the defendant's

16  assumptions — namely, that all class members had suffered one meal and two rest period

17  violations per workweek across 39,834 workweeks — by arguing the assumption was

18  unreasonable because the defendant failed to provide any "further description of any other

19  relevant factors, including shift length, the number of days the [Hourly Employee Class members]

20  worked per week, or whether they took vacations or leaves of absence" despite such evidence

---

[5] The Court additionally notes the Ninth Circuit's holding appears consistent with the practice of many circuits to consider which party has access to or control over the records and information required to determine whether the amount in controversy is met.  See, e.g., Amoche v. Guarantee Tr. Life Ins. Co., 556 F.3d 41, 51 (1st Cir. 2009) ("[D]eciding whether a defendant has shown a reasonable probability that the amount in controversy exceeds $5 million may well require analysis of what both parties have shown . . . .  In the course of that evaluation, a federal court may consider which party has better access to the relevant information); Evans v. Walter Indus., Inc., 449 F.3d 1159, 1164 n. 3 (11th Cir. 2006) ("Defendants have better access to information about conduct by defendants, but plaintiffs have better access to information about which plaintiffs are injured and their relationship to various defendants"); Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 447–48 (7th Cir. 2005) ("When the defendant has vital knowledge that the plaintiff may lack, a burden that induces the removing party to come forward with the information — so that the choice between state and federal court may be made accurately — is much to be desired").  Here, as Plaintiff correctly argued at the hearing, Defendant has exclusive access to all the employee records and is therefore in the best position to submit evidence regarding the working hours and wages of its employees.  This, too, is consistent with the Ninth Circuit's holding that the plaintiff need not produce rebuttal evidence to factually challenge the notice of removal.

1    being available to the defendant.  Id. at 700.  Notably, in asserting his factual challenge, the

2    plaintiff never submitted any evidence of his own.  Id.  The Ninth Circuit found the plaintiff had

3    raised a factual, not facial challenge to the defendant's jurisdictional allegations.  Id. at 701.

4    Because the plaintiff raised a factual challenge in his motion to remand, the defendant "had the

5    burden of supporting its jurisdictional allegations with competent proof," a burden that "remained

6    at all times" with the defendant.  Id. (internal quotations and citation omitted).  Furthermore, in

7    affirming the district court's order remanding the action to state court, the Ninth Circuit expressly

8    held that a plaintiff may assert a factual challenge to removal jurisdiction without submitting

9    rebuttal evidence.  Id. at 700.

10        This Court reads the aforementioned decisions as requiring a plaintiff to come forward

11   with contrary evidence only when the removing defendant has first come forward with sufficient

12   evidence to meet its initial burden.  See Townsend v. Brinderson Corp., No. CV 14-5320 FMO

13   (RZx), 2015 WL 3970172, at *3 (C.D. Cal. Jun. 30, 2015) (same conclusion).  Here, as in Harris,

14   Plaintiff has adequately asserted a factual challenge against Defendant's jurisdictional allegations

15   because she argues Defendant's assumptions are not supported by evidence.  Id.; Salter, 974 F.3d

16   at 964.  Plaintiff is not required to submit rebuttal evidence to factually challenge Defendant's

17   removal assumptions.  See Harris, 980 F.3d at 700; Ibarra, 775 F.3d at 1199.  Rather, Defendant

18   bears "the burden of establishing removal."  Abrego, 443 F.3d at 685, 692.  This burden does not

19   shift to the plaintiff at any time.  Id. ("Nothing in CAFA's language purports to shift the burdens

20   normally applied to removal of a state action to federal court."); Harris, 980 F.3d at 701.

21   Therefore, if the Court determines Defendant has not carried its burden of establishing removal

22   jurisdiction, it does not reach the issue of Plaintiff's evidence.  Accordingly, while Plaintiff *may*

23   rebut Defendant's evidence with her own evidence under Dart Cherokee, she need not do so in

24   order to prevail on her motion for remand.  Harris, 980 F.3d at 700; see also Salter, 974 F.3d at

25   964; Ibarra, 775 F.3d at 1199.  Defendant improperly presupposes it has already met its

26   preponderance burden in the notice of removal and does not appear to account for the different

27   reviews accorded to a remand motion when a factual versus facial challenge to removal is made.

28   Therefore, Defendant's argument is unavailing.

10

Applying the aforementioned standard, the Court will evaluate whether Defendant's evidence and the language of the complaint establishes, by a preponderance of the evidence, the amount in controversy exceeds $5,000,000.

2.      Defendant's Evidence: the Ekstrom Declarations

As previously noted, Defendant submits a seven-paragraph declaration of its "Chief Information Officer" (Ekstrom) with its notice of removal. The declaration identifies a "partial class period," from December 1, 2018 to May 1, 2021, and the number of putative class members, the number of subclass members, the number of aggregate workweeks worked by the class, and the average hourly and overtime wage rates of the class during that partial period. (Ekstrom Decl. ¶¶ 4–7.) In each of the aforementioned four paragraphs, the declaration identifies a numerical value, but provides no other information, such as an explanation as to how each value was extrapolated. (See id.) In opposition to Plaintiff's remand motion, Defendant submits a supplemental Ekstrom declaration, which is again seven paragraphs long and nearly identical to the original declaration, but for the updated valuations of the size of the putative class and subclass, the average hourly pay rate, and the aggregate number of shifts worked by the class which were "at least 6 hours" long, all occurring within a new "full class period" occurring from March 30, 2017 to May 1, 2021.[6]  (Ekstrom Decl. II ¶¶ 4–7.) Defendant submits no other evidence in support of removal.

In challenging the sufficiency of Defendant's evidence, Plaintiff argues the initial and supplemental Ekstrom declarations are insufficient to support Defendant's calculations. The Court agrees that the declarations appear to lack foundation and are otherwise deficient, as Defendant offers no corroborating evidence or methodology for its claimed average hourly and overtime wages of the class, subclass size, aggregate weeks, or aggregate shifts lasting longer

---

[6] The Court additionally notes Defendant's average hourly pay rate changed from the notice of removal to the opposition. (Compare Ekstrom Decl. ¶ 5 with Ekstrom Decl. II ¶ 5.) Presumably, the change in hourly pay rate was somehow affected when Mr. Ekstrom relied upon additional payroll records to identify new class members of the "full class period" versus class members of the "partial class period." The main problem with this, however, is that Defendant does not articulate any explanation for these differences anywhere in the supplemental Ekstrom declaration or the body of Defendant's oppositional papers. Defendant's failure to explain the basis for its shifting estimates "cause[s] the [C]ourt to question the basis, validity, and accuracy of [the Ekstrom] declarations" and Defendant's calculations derived therefrom. Garcia v. Wal-Mart Stores, Inc., 207 F. Supp. 3d 1114, 1123 (C.D. Cal. 2016).

than six hours.

As previously noted, establishing removal by a preponderance of the evidence requires presentation of "summary-judgment-type" evidence.  Ibarra, 775 F.3d at 1197.  In order to be considered by the Court, summary-judgment-type evidence must be admissible.  Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002); see also Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge [and] set out facts that would be admissible in evidence[.]").  That is, the evidence requires "a proper foundation."  Bias v. Moynihan, 508 F.3d 1212, 1224 (9th Cir. 2007) (citing Fed. R. Civ. P. 56(e)) ("Supporting . . . affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith . . . .").

Here, the Court is not satisfied the Ekstrom declarations constitute admissible evidence with respect to the numerical valuations provided.  Furthermore, even to the extent the Ekstrom declarations may be deemed admissible in form, the substantive content of such evidence is given little weight for the reasons discussed herein.  With respect to the "approximate average hourly rate of pay," for example, the only statement Mr. Ekstrom provides is:

> Based on my review of relevant payroll records created and maintained by [Defendant] in the regular course of its business, the approximate average hourly rate of pay for all members of the Putative Class during the Full Class Period is approximately $30.21."

(Ekstrom Decl. II ¶ 5.)  This identical "Based on my review . . ." preface — and nothing else — is used to support every other numerical valuation Mr. Ekstrom provides.  (See id. at ¶¶ 4, 6, 7.) Mr. Ekstrom does not describe with any particularity which records he reviewed to arrive at the figures he provides, referring only to "relevant payroll records."  It is therefore unclear which business records are included within the "relevant payroll records" Mr. Ekstrom reviewed.  See, e.g., Lockhart v. Columbia Sportswear Co., No. 5:15-cv-02634-ODW (PLAx), 2016 WL 2743481, *4 (C.D. Cal. May 11, 2016) (finding declaration did not support CAFA removal due to its lack of specificity regarding the records reviewed); Brandon v. C.H. Robinson Co. Inc., No.

1    2:14-cv-966-GEB-DAD, 2014 WL 2624995, *3 (E.D. Cal. Jun. 12, 2014) (finding declaration

2    stating that it was likely that majority of employees worked a certain number of hours per week

3    lacked foundation).

4           The Court further notes the Ekstrom declarations neither attach the records Mr. Ekstrom

5    reviewed nor attempt to establish that they are authentic.  See Canada v. Blain's Helicopters, Inc.,

6    831 F.2d 920, 925 (9th Cir. 1987) (holding that the court cannot consider "documents which have

7    not had a proper foundation laid to authenticate them").  Similarly, neither declaration includes

8    any tables, charts, or other records to corroborate Mr. Ekstrom's statements.  See Schwarz v.

9    Triwest Healthcare All. Corp., No. 2:20-cv-00312-KJM-EFB, 2020 WL 4195778, at *2–3 (E.D.

10   Cal. Jul. 21, 2020) (finding single declaration of Vice President/Controller, with two attached

11   spreadsheets in tabular form but no corroborating evidence "cannot be relied upon to establish the

12   average wage by a preponderance of the evidence").  In noting this deficiency, however, the

13   Court does not suggest Defendant is required to produce volumes of employee records, nor does

14   it suggest Defendant may satisfy its preponderance burden simply by appending thousands of

15   documents with no explanation with respect to their import.  Rather, the Court cannot accord any

16   meaningful weight to Mr. Ekstrom's bald statements that "the average hourly rate of pay . . . is

17   $31.68" or the "total workweeks in the aggregate [is 16,203]" because Mr. Ekstrom does not

18   provide any meaningful insight into how he extrapolated the purported average wage rates or

19   other values identified in his declarations,[7] other than to state the figures were "[b]ased on [his]

20   review of relevant payroll records. . . ."  See Farley v. Dolgen California LLC, No. 2:16-cv-

21   02501-KJM-EFB, 2017 WL 3406096, at *3 (E.D. Cal. Aug. 9, 2017) (declaration averring

22   average salary of purported class members did not meet preponderance burden and was deemed

23   "speculative and self-serving" where the declaration did not explain how defendant arrived at that

24   rate, did not provide the individual salaries that informed the purported average rate, and was not

---

[7] For example, is Mr. Ekstrom's "average" based on the pay rates of every member of the putative class or is it an
average taken from a smaller sample size, such as the highest and lowest pay rates?  Did Mr. Ekstrom include or
exclude outliers in calculating his average?  Is the "average" actually a median figure?  Is the average based on gross
pay or net pay rates?  The Court finds that these and other factors may result in very different "average" rate values,
thus demonstrating the need for Defendant to, at a minimum, "show its work" by describing the process by which
Mr. Ekstrom reached the values presented in his declarations.

1    submitted with corroborating documents); <u>Weston v. Helmerich & Payne Int'l Drilling Co.</u>, No.

2    1:13-cv-01092-LJO-JLT, 2013 WL 5274283, at *5 (E.D. Cal. Sept. 17, 2013) (rejecting

3    declaration attesting to figures used to estimate amount in controversy where the declarant did not

4    explain or discuss her methodology for arriving at the proposed estimates); <u>Townsend</u>, 2015 WL

5    3970172, at *4 (rejecting declaration for lack of foundation where it did not indicate which

6    records were reviewed to arrive at figures provided, stating "The court is unable to discern

7    whether Wilson reviewed actual employee time records and pay records, whether he relied on

8    summaries prepared for him by someone else, or whether the records are something else

9    entirely.").    Because Defendant provides neither corroborating documentation nor any

10   explanation as to how the numerical values were extrapolated from Defendant's employment

11   records, the Court finds that such conclusory averments lack foundational support or, at a

12   minimum, must be accorded little weight.   <u>See McNutt</u>, 298 U.S. at 189 ("competent" evidence,

13   not "mere averments" must be used to satisfy preponderance burden).

14         In opposition to Plaintiff's motion, Defendant appears to focus on the form rather than

15   substance of the declarations and simply refers to and relies upon the numbers included in the

16   Ekstrom declarations as "evidence."   (<u>See</u>, <u>e.g.</u>, ECF No. 15 at 5 ("[Defendant]'s Notice of

17   Removal [is] supported by an evidentiary declaration (i.e., evidence). . . .").)  Indeed, during the

18   hearing on the motion, counsel stated many times that the declarations meet the summary-

19   judgment-type evidence standard because they were signed under penalty of perjury by Mr.

20   Ekstrom, who attests that the numerical valuations provided in the declarations were correct.[8]

21   However, other than to conclude the declarations are "evidence" that withstand all scrutiny

22   because they were signed under penalty of perjury, Defendant does not substantively address

23   Plaintiff's challenge or submit argument or authority demonstrating the declarations constitute

24

25   _____

     [8] Defendant additionally submits the declaration is admissible under the business records exception to hearsay, which
26   was not an objection Plaintiff submitted and which the Court need not address here.  <u>But see</u> <u>Garcia</u>, 207 F. Supp. 3d
     at 1122 (rejecting defendant's attempt to satisfy business records exception under Fed. R. Evid. 803(6)(B), where
27   declaration failed to address the other required elements of that exception, i.e., 803(6)(A) (requiring that "the record
     was made at or near the time [of the event described] by — or from information transmitted by — someone with
28   knowledge"), at 803(6)(C) (requiring that "making the record was a regular practice"), or 803(6)(D) (requiring that
     "these conditions are shown by the testimony of a custodian or another qualified witness, or by a certification")).

admissible summary-judgment-type evidence for the purpose for which they are being offered.[9] See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003), cert. denied, 541 U.S. 937 (2004) (holding that the court "do[es] not focus on the admissibility of the evidence's form" but rather "focus[es] on the admissibility of its contents").

At the hearing, Defendant argued "there are hundreds" of cases in which average rates supplied in declarations have been accepted by the court, to the point that such cases "are legion." None of these purported cases, however, are identified in Defendant's briefings.   At most, Defendant cites to Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004) for the contention that Defendant "need not . . . make [Plaintiff's] case for her, or prove the amount in controversy beyond a legal certainty."   (ECF No. 15 at 6 (quoting id. ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy.")).)   Defendant's statement significantly mischaracterizes the Ninth Circuit's ruling.   Valdez is an appeal from the district court's grant of summary judgment in which, rather than entertain the merits of the appeal, the Ninth Circuit *sua sponte* considered the issue of subject matter jurisdiction and determined the record did not indicate the defendant had established such jurisdiction by a preponderance of the evidence.   Valdez, 372 F.3d at 1115–17.   Accordingly, the Ninth Circuit remanded the matter to the district court to evaluate the sufficiency of the defendant's evidence, with instructions to remand the action to state court if it found jurisdiction has not been established.   Id. at 1118.   Valdez does not evaluate the sufficiency of the defendant's proffered evidence or whether it constitutes summary-judgment-type evidence (indeed, the tenor of the opinion suggests the defendant submitted no evidence whatsoever).   To the contrary, immediately following the phrase quoted by Defendant, the Ninth Circuit affirmed its holding that summary-judgment-type evidence is required to establish the amount in controversy but acknowledged it has "not addressed the types of evidence defendants may rely upon to satisfy the preponderance

---

[9] Defendant additionally argues its calculations based on this "evidence" must stand simply because Plaintiff failed to submit any rebuttal evidence to "adequately challenge" them.   As previously discussed, however, Plaintiff was not required to submit rebuttal evidence or alternative figures in order to factually challenge the sufficiency of Defendant's evidence, nor did the evidentiary burden to establish a lack of removal jurisdiction shift to Plaintiff at the moment Defendant submitted the Ekstrom declarations.   See Ibarra, 775 F.3d at 1199; Abrego, 443 F.3d at 685, 692; Harris, 980 F.3d at 701.

1   of the evidence test for jurisdiction. . . ." Id. at 1117.  Thus, Valdez is wholly inapplicable to the

2   issue of whether Defendant's proffered declarations satisfy the summary-judgment-type evidence

3   standard.

4        To the extent Defendant proffers Muniz v. Pilot Travel Centers LLC, No. S-07-0325 FCD

5   EFB, 2007 WL 1302504 (E.D. Cal. Apr. 30, 2007) in support of its arguments on the evidentiary

6   sufficiency of the Ekstrom declarations, the Court also considers this case.[10]  In Muniz, the

7   defendant provided the declaration of its manager of employee relations, which "set forth the

8   underlying facts needed to calculate the amount in controversy," as well as a declaration from

9   counsel who, based on the facts supplied by the defendant's manager, calculated the amount in

10  controversy.  Muniz, 2007 WL 1302504, at *2.  The quoted statements are the only ones given by

11  the court with respect to the content or sufficiency of the proffered declarations.  The plaintiff

12  challenged the sufficiency of the defendant's evidence on several grounds, including personal

13  knowledge, foundation, and the fact that no supporting documents were submitted with the

14  declarations.  Id. at *2 n.5.  However, the court rejected these objections in a footnote.  Id.  In

15  summarily deeming the defendant's declarations sufficient, see id. at *2, the court expressly

16  commented that the plaintiff was "master of [her] claim[s],' and if she wanted to avoid removal,

17  she could have alleged facts specific to her claims which would narrow the scope of the putative

18  class or the damages sought. . . ." Id. at *4.  Because Muniz (an unpublished case from 2007)

19  predates the Ninth Circuit's holdings in Ibarra and Harris and appears to improperly shift the

20  burden to the plaintiff to refute assertions of jurisdiction and establish that there is no jurisdiction,

21  this Court finds Muniz unpersuasive.  Furthermore, because Muniz did not provide any details

22  with respect to the substantive content of the proffered declarations or evaluate their sufficiency

23  as summary-judgment-type evidence, the Court cannot rely on Muniz for guidance with respect to

24  the foundational sufficiency of the declarations produced in the instant case.   Accordingly,

25  [10] However, the Court notes Defendant's briefing does not actually reference Muniz for the above-stated contention,
26  but instead cites to the case for the proposition that the Court "may consider supplemental evidence . . . not originally
included in the removal notice."  (See ECF No. 15 at 7.)  This proposition is plainly supported by the authorities
27  referenced by the Court and is not in dispute.  Further, the Court reminds the parties it is not the Court's duty to
assume facts that have not been pleaded or make the parties' arguments for them.  Nonetheless, in an abundance of
caution, and to the extent Defendant proffers argument that Muniz supports its contention that the Ekstrom
28  declarations sufficiently satisfy the summary-judgment-type evidence requirement, the Court will address the case.

1    Defendant's reliance on Muniz, if any, is unavailing.

2           Finally, while Defendant does not adequately brief this issue, the Court nevertheless

3    agrees Defendant need not " 'research, state, and prove the plaintiff's claims for damages.' "

4    Coleman v. Estes Express Lines, Inc., 730 F. Supp. 2d 1141, 1147–48 (C.D. Cal. 2010) (quoting

5    Muniz, 2007 WL 1302504, at *2).  Similarly, Defendant does not necessarily have to produce

6    evidence in a form that would be admissible at trial, "so long as "the contents of the [records] are

7    admissible . . . ."  Fraser, 342 F.3d at 1036.  Nonetheless, Defendant cannot base its jurisdictional

8    calculations on mere "speculation and conjecture."  Lowdermilk v. U.S. Bank Nat'l Ass'n, 479

9    F.3d 994, 1002 (9th Cir. 2007) (overruled on other grounds); see also Weston, 2013 WL

10   5274283, at *6 (explaining that even if a defendant "is not obligated to prove Plaintiff's case . . .

11   there are methods of determining a reasoned basis for the calculations such as random sampling

12   and, as noted above, using actual numbers, rather than averages to determine the amount put in

13   controversy by the complaint . . . or, at a minimum, explaining why Defendant's methodology

14   and assumptions make sense.") (internal citations omitted).   Here, given the conclusory

15   statements in the Ekstrom declarations, combined with Mr. Ekstrom's failure to submit the

16   records he reviewed or any other corroborating documents, the Court simply has no basis from

17   which it may conclude that the declarations are sufficient to establish Defendant's burden on

18   removal.  See Garcia, 207 F. Supp. 3d at 1122 (declining to rely on declaration as summary-

19   judgment-type evidence required under Ibarra for same reasons).

20          Based on the foregoing, the Court finds Mr. Ekstrom's declaration and supplemental

21   declaration, viewed alone, cannot be relied upon as summary-judgment-type evidence sufficient

22   to establish the average wage rates or other statistics proffered.  That is, regardless of whether the

23   declarations are admissible in form, the substantive content of the declarations lack foundational

24   support and are therefore accorded so little weight that they do not preponderate.  Because each of

25   Defendant's amount in controversy estimates is premised on these uncorroborated numerical

26   values, the Court cannot consider them to determine the amount in controversy.  On this basis

27   alone, remand is warranted.

28   ///

1    3.    Plaintiff's Allegations

2        Furthermore, even assuming the Ekstrom declarations comported with summary-
3    judgment-type evidence standards and the Court accepted Defendant's numerical valuations
4    identified therein, the result would not change because the declarations are still entirely silent as
5    to (1) the number and (2) frequency of meal and rest breaks that were missed during the
6    applicable class period (Plaintiff's missed break claims); (3) how many employees were
7    underpaid for training/orientation courses and (4) the amount of time each employee was
8    underpaid (Plaintiff's straight and overtime wage claims); and (5) the resulting number of
9    employees entitled to waiting time penalties, (6) the number of penalty days permitted for each
10   employee, and (7) the daily penalty rate (Plaintiff's waiting time penalties claims).

11       Defendant fills in the blanks with numerical values that it "conservatively assumes" are
12   reasonable to determine the purported amounts in controversy for each claim.  But each of these
13   assumptions lack any evidentiary support.  Nor, for the reasons that follow, can these assumptions
14   be reasonably inferred from the language in the complaint.

15       **a.    Unpaid Wages Claims**

16       Plaintiff alleges Defendant "failed to compensate Plaintiff and the Class for all hours
17   worked," and that Plaintiff and the Class "were not fully paid for all the overtime and/or double-
18   time payments legally owed to them."  Accordingly, Plaintiff seeks to recover damages for the
19   nonpayment of wages, plus penalties, reasonable attorneys' fees, expenses, and costs.  (Compl. ¶¶
20   30–34, 41–45.)

21       Defendant proffers different amount-in-controversy estimates for these claims based on
22   two different assumptions with respect to the number of hours each class member was underpaid:
23   in the notice of removal, Defendant assumed every class member was underpaid by one hour of
24   straight time and one hour of overtime every week of the aggregate weeks worked by the class (a
25   100% violation rate); in the opposition to remand, Defendant assumed the more conservative
26   estimate that every class member was underpaid by one hour during the entire relevant class
27   period.  Neither assumption can be reasonably inferred from the complaint, as follows.

28   ///

1          i.     <u>Original Assumption in Notice of Removal</u>

2       Because the complaint does not specify the number of hours (straight-time and overtime)

3 Plaintiff and the class were not paid but alleges that Defendant "uniformly and systematically"

4 failed to pay wages for all hours worked (<u>id.</u> at ¶¶ 2a, 2b, 2c), Defendant asserts it would be

5 reasonable to presume a 100% violation rate (i.e., that Defendant engaged in unlawful wage

6 practices during each and every employee shift); therefore, the "conservative estimate" that every

7 member of the putative class was underpaid by one hour of straight time and one hour of overtime

8 each week was imminently reasonable.  To calculate the amount in controversy for Plaintiff's

9 unpaid wages claims, Defendant multiplied one hour at each rate by the aggregate number of

10 workweeks to reach $513,311.04 for the straight time wage claim and $880,957.11 for the

11 overtime wage claim; thus, Defendant contends the sum total of the amount in controversy for

12 Plaintiff's unpaid wages claim is $1,394,268.15.

13       In seeking to remand, Plaintiff argues the wage claims — which arise from Defendant's

14 purported failure to pay for job-specific training and orientation time "whenever" such training

15 was required — do not contain allegations or support a reasonable assumption that such training

16 was required every week.  Similarly, Plaintiff argues the "uniform and systematic" allegation,

17 without more, does not specify a timeframe or frequency of violation and therefore does not

18 support Defendant's assumption that the purported violation occurred weekly.  Finally, Plaintiff

19 argues Defendant has not submitted sufficient evidence to support its assumptions or calculations.

20 The Court finds these arguments persuasive.

21       A plain reading of the complaint shows Plaintiff's wage claims are based on the general

22 allegations that Defendant failed to compensate Plaintiff and class members for time spent on

23 training/orientation courses.  (Id. at ¶¶ 16–17.)  These general allegations are incorporated by

24 reference into Plaintiff's wage claims (<u>see id.</u> at ¶¶ 30, 35, 41) and Defendant does not provide

25 authority or explanation for ignoring this language.  Nowhere in the complaint does Plaintiff

26 allege facts showing that every class member was required to complete special training for each

27 assignment, as the training was "client specific."  Nor does the complaint indicate training was

28 required every week.  Further, while the Court acknowledges that extrapolating class-wide

19

assumptions from class representatives' individual experiences is not probative in determining the amount in controversy, see, e.g., Morris v. LiquidAgents Health Care, LLC, No. 12-CV-4220 YGR, 2012 WL 5451163 (N.D. Cal. Nov. 7, 2012), the Court nevertheless notes that Plaintiff's individual claim allegations that she was hired to work for a single client for a seven-week assignment tends to support the reasonable inference that training was not required every week, contrary to Defendant's assumption that it was.

Finally, the "uniform and systematic" allegations, without more, do not support Defendant's assumption because they do not indicate how often the purported violations occurred.  See, e.g., Ramirez-Duenas v. VF Outdoor, LLC, No. 1:17-cv-0161-AWI-SAB, 2017 WL 1437595, at *3 (E.D. Cal. Apr. 24, 2017) ("uniform practice" allegation did not support assumption of three violations per week); Castillo v. Trinity Servs. Grp., Inc., No. 1:19-cv-01013-DAD-EPG, 2020 WL 3819415, at *6 (E.D. Cal. Jul. 8, 2020) (rejecting defendant's violation rate assumption where defendant submitted no evidence regarding violation rates and relied solely on allegations that defendant "engaged in a systematic pattern of wage and hour violations" "at all relevant times"); see also Biag v. King George - J&J Worldwide Servs. LLC, No. 20-cv-307-BAS-DEB, 2020 WL 4201192, at *6 (S.D. Cal. Jul. 22, 2020) ("[E]ven when a complaint alleges a more egregious 'uniform' or 'systematic' practice of wage abuse, courts still view the allegations in conjunction with the language of the complaint to see if a 100% assumption is reasonable, particularly in the absence of data that would specifically prove a violation rate.") (citing Holcomb v. Weiser Security Serv., Inc., 424 F. Supp. 3d 840, 845 (C.D. Cal. 2019); Vilitchai v. Ametek Programmable Power, Inc., No. 3:15cv1957-L(BLM), 2017 WL 875595, at *3 (S.D. Cal. Mar. 6, 2017); Beck v. Saint-Gobain Containers, No. 2:16-cv-03638-CAS-SK, 2016 WL 4769716, at *9 (C.D. Cal. Sept. 12, 2016)).

       ii.    New Assumption in Opposition to Motion to Remand

In response to Plaintiff's motion, Defendant appears to concede a more limited scope of Plaintiff's claims is appropriate, as it provides new calculations in its opposition that are based on the new assumption that each of the 1,306 class members of the "full class period" were not paid one straight hour ($30.21/hour) for required orientation, thus reducing Defendant's wage claim

1   amount in controversy estimate from $1,394,268.15 to $39,454.26.[11]   (ECF No. 15 at 11–12.)

2   For similar reasons articulated with respect to Defendant's original assumption, the Court remains

3   unsatisfied that Defendant has identified sufficient allegations to support its new assumption.

4   Namely, Plaintiff's allegations do not support an inference that all clients required specialized

5   training, or that all class members were required to complete such training during the relevant

6   class period.  The "uniform and systematic" allegations fail to support a reasonable inference that

7   all class members were underpaid wages for the same reasons previously discussed.

8          Defendant additionally argues Plaintiff's allegation that it had a "policy and practice" of

9   requiring its employees to take and complete training/orientation courses without compensating

10  them for such time supports a reasonable inference that every class member was underpaid by at

11  least one hour due to unpaid training time.  (Id.)  The Court again disagrees.  Instead, the Court

12  finds the analysis set forth by the Ninth Circuit in Ibarra appears on point and instructive:

13                [A] "pattern and practice" of doing something does not necessarily
                  mean *always* doing something.  The complaint alleges a "pattern
14                and practice" of labor law violations but does not allege that this
                  "pattern and practice" is universally followed every time the wage
15                and hour violation could arise. . . .

16  Ibarra, 775 F.3d at 1198–99.  As noted, Plaintiff's allegation that the trainings were "client-

17  specific" plausibly supports an inference that not all client-assignments required individualized

18  training (or, as Plaintiff argues, repeat training).

19         The Court is similarly unpersuaded by the cases proffered in support of Defendant's

20  argument, none of which are published or arise from this District, none of which appear to accept

21  the defendant's assumption as reasonable based on "policy and practice" allegations, and all of

22  which pre-date Harris.  (See ECF No. 15 at 12–13 (citing Soto v. Tech Packaging, Inc. (Tech

23  Packaging), No. ED CV 19-1766-MWF (SHKx), 2019 WL 6492245, at *5 (C.D. Cal. Dec. 3,

24  2019); Soto v. Greif Packaging LLC (Greif Packaging), No. SACV 17-2104 JVS(JDEx), 2018

25  WL 1224425, at *3 (C.D. Cal. Mar. 8, 2018); Vasquez v. Randstad US, L.P., No. 17-cv-04342-

26  EMC, 2018 WL 327451, at *5 (N.D. Cal. Jan. 9, 2018); Arreola v. Finish Line, No. 14-CV-

27  03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014).)

28  _____

[11] Defendant addresses only the straight time wages claim and not the overtime wages claim in its opposition.

1    Arreola is a pre-Ibarra case in which the court specifically noted it found the defendant's

2    assumptions to be reasonable "based on the principle that a plaintiff is the master of the claim and

3    may avoid federal jurisdiction by pleading different facts."   Arreola, 2014 WL 6982571, at *4.

4    Tech Packaging — a post-Ibarra case that nevertheless expressly relied on Muniz — similarly

5    accepted defendant's assumption because the plaintiff "submit[ted] no countervailing evidence."

6    Tech Packaging, 2019 WL 6492245, at *5.   As the Court previously articulated, cases that appear

7    to improperly shift the burden to the plaintiff to refute assertions of jurisdiction and establish that

8    there is no jurisdiction (such as Muniz and its progeny) are unpersuasive.

9    In Grief Packaging, the defendant's assumptions were deemed reasonable based on the

10    court's consideration of both the language in the complaint and the defendant's evidence, which

11    the court credited because defendant's declaration provided a detailed methodology and

12    calculations to support its valuations.   Grief Packaging, 2018 WL 1224425, at *3.   Further, the

13    court in Grief Packaging found the defendant's assumption of one overtime pay violation per

14    week was "reasonable and conservative" in light of the fact that the plaintiff "alleged daily

15    violations" — not due to the "consistent and regular basis" allegation as Defendant contends

16    (ECF No. 15 at 12 (citing Grief Packaging, 2018 WL 1224425, at *3)).   Grief Packaging, 2018

17    WL 1224425, at * 4.   Here, by contrast, Defendant's assumptions rest on neither evidentiary

18    support nor expansive allegations such as "daily" violations.   Grief Packaging, therefore, is

19    factually inapposite to the instant action.

20    Interestingly, the court in Vasquez expressly stated it would only "fully credit Defendants'

21    assumption that all class members were required to 'consistently' work through their rest breaks"

22    because even with that assumption, the defendants "still will not meet the amount-in-

23    controversy."   Vasquez, 2018 WL 327451, at *4.   Nothing in the case indicates the defendants'

24    assumptions would be accepted otherwise, although the Vasquez court does appear to fault the

25    plaintiff to some extent for "not propos[ing] an alternative violation rate."   Id. at *2.   Nonetheless,

26    in evaluating the language of the complaint, the Vasquez court compared the plaintiff's terms by

27    their dictionary definitions to determine that "consistent" implies a stronger degree of uniformity

28    than "pattern and practice" or "policy or practice," which by contrast, "does not necessarily mean

22

1    *always* doing something." Id. at *2–3 (citing Ibarra, 775 F.3d at 1198). Further, Plaintiff's

2    complaint does not include an allegation of any "consistent" policy and/or practice. Vasquez is

3    therefore factually distinct from the instant matter.

4          Based on the foregoing, the Court concludes Defendant's assumption that every class

5    member was denied an hour of pay is not reasonably supported by the language in the complaint.

6    Nor has Defendant attempted to support the assumption that every class member was required to

7    attend client-specific training (for which they were underpaid by an hour) with evidence.

8    Consequently, the Court must conclude Defendant's calculation is speculative to the extent it

9    relies on this assumption. See Ibarra, 775 F.3d at 1199; see also Weston, 2013 WL 5274283, at

10   *6 ("The fact that Defendant's revised figures are smaller than the original numbers does not

11   lessen the burden of providing *evidence, rather than assumptions*.") (emphasis in original). Thus,

12   the Court concludes Defendant has not supported its wage violation calculations by a

13   preponderance of the evidence.

14         **b.**     **Meal and Rest Period Violations Claims**

15         California law prohibits employers from requiring employees to work during a required

16   meal or rest period, and the employer must pay to the employee an additional hour of pay at the

17   employee's regular rate of pay for each day that the period is not provided. Cal. Labor Code §§

18   226.7(b)–(c), 1197(b)–(c).

19         Plaintiff alleges she and the class "regularly worked in excess of five-hour work periods

20   without being authorized and/or permitted to take a lawful first and/or second meal break. . . ."

21   As a result, Plaintiff contends she and the class "are entitled to recover one additional hour of

22   regular rate pay for each work day that a meal break was not authorized and/or permitted," as

23   well as costs and reasonable attorneys' fees. (Compl. ¶¶ 46–51.) Similar to the meal breaks,

24   Plaintiff alleges Defendant failed to pay Plaintiff and the class for rest breaks they were not

25   permitted to take and seeks to recover "one additional hour of pay at their regular rate of

26   compensation with Defendant for each work day that a rest break was not authorized and/or

27   permitted," plus costs and reasonable attorneys' fees. (Id. at ¶¶ 52–57.)

28         Because the complaint does not specify the frequency with which meal breaks or rest

23

breaks were not permitted, Defendant utilized a number of assumptions to estimate an amount in controversy in its notice of removal.  Relying on the allegations that Plaintiff and the class "regularly" worked in excess of five-hour work periods without receiving a break and that Defendant has "uniformly and systematically" failed to permit such breaks (Id. at ¶¶ 2e, 49), Defendant asserted it would be reasonable to infer a 100% violation rate (i.e., that Defendant engaged in unlawful wage practices during each and every employee shift).  Yet Defendant instead "conservatively assumed" three meal period violations and three rest period violations per week.  (ECF No. 1 at 8–10.)  Utilizing the average wage rate and aggregate workweek estimate provided in the Ekstrom declaration (Ekstrom Decl. ¶¶ 5–6), Defendant determined the meal break violations and rest break violations claims each amounted to $1,539,933.12 (3 violations/week x $31.68/hour x 16,203 workweeks), thus calculating the sum total for both break claims to be $3,079,866.24.

In moving to remand, Plaintiff argued Defendant's assumptions that three meal and rest breaks were missed per week lacked evidentiary support because they failed to take into account "critical variables, such as the frequency or lengths of shifts warranting breaks, the full-time or part-time status of the putative class, or the amount of leave taken."  Further, Plaintiff argued Defendant's assumptions were not reasonably inferable from the allegations in the complaint.  (ECF No. 7-1 at 13–16.)

Defendant appears to "double-down" on its assumptions in opposition to Plaintiff's motion.  That is, Defendant submits a supplemental declaration which avers that there were 83,754 aggregate shifts in excess of six hours worked by the class during the "full class period," and that both a meal break and a rest break violation occurred during all of them (a 100% violation rate).  (ECF No. 15 at 8–11.)  Defendant maintains this violation rate is reasonable based on the exact same allegations previously identified: that Defendant has "uniformly and systematically" failed to permit breaks; that Defendant has had "a policy and/or practice" of not permitting lawful meal or rest breaks; and that Plaintiff and the class "regularly" worked in excess of five-hour work periods without a break.  (ECF No. 15 at 8–9 (citing Compl. ¶¶ 2d, 2e, 18, 49).)  As a result, Defendant contends the new amount in controversy for Plaintiff's break violation

24

1    claims is $5,060,416.68 (i.e., the hourly wage of $30.21 x 2 breaks/shift x 83,754 aggregate

2    shifts).  (Id. at 8–11.)

3           Again, Defendant presents no evidence to establish the frequency with which the

4    violations purportedly occurred.  That is, Defendant does not submit evidence regarding why the

5    assumption that each employee missed a meal and rest break every shift was more appropriate

6    than the assumption that, for example, a meal and rest break was missed every other shift, or

7    every other month.  See Garibay v. Archstone Communities, LLC, 539 F. App'x. 763, 764 (9th

8    Cir. 2013).  Instead, Defendant relies solely on the allegations in the complaint to support the

9    assumption that the violations occurred in every shift in which a meal break was required; thus,

10   the Court must evaluate whether the 100% violation rate Defendant relied upon to calculate the

11   amount in controversy is based on a chain of reasoning and reasonable assumptions grounded in

12   the allegations of Plaintiff's complaint.  See Arias, 936 F.3d at 925.

13          With respect to Plaintiff's meal and rest break violation claims, Defendant cites to the

14   same general "uniform and systematic" allegation in the "Introduction" section of the complaint

15   (Compl. ¶ 2) that it relied upon to support its wage violation assumptions.  However, without

16   providing any justification or legal authority for doing so, Defendant simultaneously ignores the

17   more claim-specific allegations in the complaint in which the class seeks compensation for "each

18   work day *that*" a meal break or rest break was not permitted (id. at ¶¶ 51, 57 (emphasis added)),

19   and penalties for untimely payment of wages owed to Plaintiff and the class "for not being, *from*

20   *time to time*, authorized and/or permitted to take their lawful meal or rest breaks" (id. at ¶ 81

21   (emphasis added)).  The Court finds the first statement semantically akin to "each day *when* . . ."

22   or "each work day *in which* [a violation occurred]."  As such, the phrase indicates Plaintiff seeks

23   compensation for every occurrence of being denied a rest or meal break without compensation; it

24   does not support an inference that Plaintiff and the class members were denied a rest or meal

25   break during every shift in which a meal or rest break was required.  The phrase "from time to

26   time" even more powerfully supports this finding.  As such, the Court finds these omitted

27   allegations are relevant to the instant analysis and tend to discredit any assumption that use of a

28   100% violation rate is reasonable.

1    Further, the Court previously found Plaintiff's "uniform and systematic" allegations did

2    not support a 100% violation rate with respect to Plaintiff's wage claims.  As Defendant is relying

3    on the exact same allegation to support its assumptions with respect to Plaintiff's break violation

4    claims, the Court finds the same reasoning applies.  Ramirez-Duenas, 2017 WL 1437595, at *3;

5    Castillo, 2020 WL 3819415, at *6; Biag, 2020 WL 4201192, at *6; Holcomb, 424 F. Supp. 3d at

6    845; Vilitchai, 2017 WL 875595, at *3; Beck, 2016 WL 4769716, at *9.  Similarly, with respect

7    to the "policy and practice" allegation, the Court again finds Ibarra's holding applies here, and

8    determines that a pattern and practice of doing something does not necessarily mean *always* doing

9    something.  Rather,

10       Because the complaint does not allege that [the defendant]
         universally, on each and every shift, violates labor laws by not
11       giving rest and meal breaks, [the defendant] bears the burden to
         show that its estimated amount in controversy relied on reasonable
12       assumptions.

13   Ibarra, 775 F.3d at 1198–99.  Similarly, the Court finds the term "regularly" is not synonymous

14   with "always."  See, e.g., Dobbs v. Wood Grp. PSN, Inc., 201 F. Supp. 3d 1184, 1189 (E.D. Cal.

15   2016) (citing Ibarra, 775 F.3d at 1198–99 & n.3 and rejecting assumption that allegations of

16   "regular" and "pattern and practice"-based violations supported 100% violation rate); Avila v.

17   Con-Way Freight, Inc., No. SACV 11-01949-CJC(RNBx), 2012 WL 12887771, at *3 (C.D. Cal.

18   May 18, 2012), aff'd, 588 F. App'x 560 (9th Cir. 2014) ("the term 'regularly' does not refer to

19   any frequency of occurrence with enough certainty on which to base a reliable estimate.

20   'Regularly' may mean fewer than once a month or as often as once a day.  'Regularly' is simply

21   not a precise term, and it does not indicate a precise number of occurrences.").  Accordingly, the

22   Court finds Plaintiff's allegations of "uniform and systematic," "regular," and "pattern and/or

23   practice" violations, without more, do not support Defendant's presumption of a 100% violation

24   rate.

25       On this record, the Court finds Defendant's assumption of a 100% violation rate is

26   unreasonable.  See Ibarra, 775 F.3d at 1199.  Because Defendant relies on this unreasonable

27   assumption to make its amount in controversy calculation, the Court finds Defendant's assertion

28   that the figure exceeds $5 million to be merely speculative.  Id. at 1197.  Furthermore, the parties

26

do not argue or submit evidence in support of any different proposed violation rate.  While the Court is cognizant that other district courts in the past have rejected the 100% violation rate and *sua sponte* applied a different violation rate percentage that they deemed "reasonable," this Court is also mindful of more recent authority from the Ninth Circuit, in which the appellate court has discouraged district courts from "supply[ing] further assumptions of [their] own."  Harris, 980 F.3d at 701 ("The district court should weigh the reasonableness of the removing party's assumptions, not supply further assumptions of its own."); see also Bell v. NuSil Tech. LLC, No. 1:20-cv-00061-NONE-JLT, 2021 WL 1208013, at *5 (E.D. Cal. Mar. 31, 2021) (citing Harris, 980 F.3d at 701) (excluding defendant's proffered calculation from amount in controversy estimate where underlying assumption was unreasonable, and declining to substitute the unreasonable variable with an alternative variable).  Accordingly, this Court declines to assume a lesser but equally unsupported violation rate and finds Defendant has not supported its meal and rest break calculation by a preponderance of the evidence.

### c.    Waiting Time Penalties

California Labor Code §§ 201 and 202 require an employer to pay all wages due to an employee at the time the employee is discharged or quits.  Section 203 provides a penalty for the willful failure to pay all wages due to such an employee, in an amount equal to the sum of the employee's wages at the employee's prior rate of pay, until the unpaid wages are paid, in an amount not to exceed the equivalent of thirty days' pay.  Cal. Labor Code § 203.

Plaintiff alleges Defendant failed to pay at time of separation all wages due to Plaintiff and the members of the class who separated from Defendant for "among other things, reporting time, all hours worked, overtime and double-time, and premium wages for unlawful meal breaks."  (Compl. ¶ 71.)  Plaintiff seeks to recover compensation "for all their unpaid wages earned" as well as penalties "equal to the daily earnings of such employees up to an amount equal to those owed for 30 days of work."[12]  (Id.)  Plaintiff does not indicate how many class members

---

[12] Plaintiff asserts two causes of action for waiting time penalties: Claim Eight pursuant to Cal. Labor Code §§ 201–203 and Claim Ten pursuant to Cal. Labor Code § 210, which provides penalties for the same code violations "in addition to, and entirely independent and apart from, any other penalty provided in this article. . . ." Cal. Labor Code § 210.  Defendant appears to only provide amount in controversy estimates for Claim Eight.  However, both penalties claims pertain to the same wage and break violation claims and other claims asserted in the complaint and should

1   were separated from Defendant at the relevant time, which wages were not paid at separation or

2   for how long such wages remained unpaid, or what each employees' daily payrate was.

3        Because the complaint is silent as to these numbers, Defendant relied upon several

4   assumptions to calculate the amount in controversy for Plaintiff's penalties claim as follows: the

5   amount of a full day's wages (the hourly rate of $31.68/hour x eight hours) multiplied by the

6   number of separated employees subclass members (502), multiplied by the maximum statutory

7   penalty (30 days) = $3,816,806.40.  (ECF No. 1 at 10–11.)

8        In moving to remand, Plaintiff argues Defendant's assumptions — particularly the

9   assumption that each of the 502 separated employees suffered a maximum-penalty violation,

10  regardless of their length of employment — are not supported by competent evidence or legal

11  authorities and are not reasonable inferences based on Plaintiff's allegations.  (ECF No. 7-1 at

12  17–18 (citing Lowdermilk, 479 F.3d at 1000–01; Wilkins v. Navigant Cymetrix Co., No. CV 19-

13  09755 PA (MRWx), 2020 WL 1972280 (C.D. Cal. Jan. 8, 2020); Garibay, 539 F. App'x. at 764.)

14       In opposition to Plaintiff's motion to remand, Defendant argues Plaintiff's allegations

15  support a reasonable inference to apply the maximum 30-day penalty.  (ECF No. 15 at 13.)

16  Further, Defendant submits new calculations based on the new and updated estimates provided in

17  the supplemental Ekstrom declaration.  Specifically, Defendant identifies a larger "separated

18  employees subclass" of 1,013 members, based on the new "full class period" of March 30, 2017

19  to May 1, 2021, and updates the average hourly rate to reflect a straight time pay rate of $30.21.

20  (Ekstrom Decl. II ¶¶ 4–5, 7.)  As a result, Defendant contends the new amount in controversy for

21  Plaintiff's waiting time penalties claim is $7,344,655.20 (i.e., the max penalty [30 days] x daily

22  wage [$30.21 x 8 hours] x full period subclass [1,013 members]).

23       There are four assumptions underlying this calculation which the Court must evaluate

24  against Plaintiff's allegations and Defendant's supporting evidence in order to determine whether

25  Defendant has met its preponderance burden: (1) the average hourly rate of $30.21; (2) the eight-

26  hour average workday; (3) the maximum statutory penalty (30 days) applies for each person; and

27

28  therefore be considered together in the Court's evaluation of the language of the complaint and identification of
    reasonable inferences that may arise therefrom.

(4) every employee who ceased employment was owed unpaid wages at the time of separation. The Court addresses these assumptions in turn.

        i.      Average Hourly Rate of $30.21

The first assumption is disputed by Plaintiff as unsupported in the Ekstrom declarations. The Court previously determined the valuations provided in the Ekstrom declarations are not sufficiently supported with corroborating evidence.  Moreover, the complaint does not identify any pay rate.  Thus, Defendant's first assumption of an average hourly rate of $30.21 is not reasonable.

        ii.      Eight-Hour Workday

As to the second assumption, Plaintiff correctly argues that Defendant has presented no evidence to show its employees normally worked an eight-hour shift per day.  At most, the supplemental Ekstrom declaration states the "Putative Class members worked . . . shifts of at least 6 hours during the Full Class Period."  (Id. at ¶ 6.)  Thus, Defendant's second assumption is contradicted by its own evidence and the Court finds it unreasonable.

        iii.      Maximum Penalty of Thirty Days (100% Violation Rate)

With respect to the third assumption, that every member of the separated employees subclass did not receive their unpaid wages within 30 days of separation (i.e., the maximum statutory penalty, a 100% violation rate), Plaintiff correctly notes Defendant provides no summary-judgment type evidence supporting this assumption.  See Garibay, 539 F. App'x at 764 (affirming remand where defendants lacked evidentiary support for assumption and relied on "speculative and self-serving assumptions about key unknown variables.").  Therefore, the Court must look to the language of the complaint to determine whether Defendant's assumption may reasonably be inferred from Plaintiff's allegations.  Arias, 936 F.3d at 925 (citing Ibarra, 775 F.3d at 1199) (defendant may "rely on a chain of reasoning and assumptions made from the complaint" but "when a party relies on a chain of reasoning that includes assumptions, those assumptions must be reasonable.")

The Court notes this district has issued differing rulings in post-Arias cases with respect to the propriety of the use of a 100% violation rate for a waiting time penalties claim.  In Mann v.

1    Altec Indus., Inc., for example, the court found the defendant's "sweeping assumption[]" that

2    each of the 137 separated employees suffered a wage violation for the entire 30-day period was

3    unreasonable.  Mann, No. 2-20-cv-00273 WBS DB, 2020 WL 1888975, at *3 (E.D. Cal. Apr. 16,

4    2020).  Citing to Arias, the court held it was unreasonable to rely on maximum assumptions when

5    the defendant's evidence lacked specificity.  Id.  In Hender v. Am. Directions Workforce LLC, by

6    contrast, the court found defendant's use of a 30-day maximum statutory penalty was appropriate

7    based on the complaint's allegations.    Hender, No. 2:19-cv-01951-KJM-DMC, 2020 WL

8    5959908, at *4 (E.D. Cal. Oct. 8, 2020), reconsideration denied, No. 2:19-cv-01951-KJM-DMC,

9    2021 WL 2577030 (E.D. Cal. Jun. 23, 2021).   Nevertheless, the Hender court ultimately found

10   defendant failed to meet its preponderance burden because it lacked evidentiary support for the

11   other variables used to calculate the amount in controversy on the plaintiff's waiting time

12   penalties claim.  Id.; see also Nunes v. Home Depot U.S.A., Inc., No. 2:19-cv-01207-JAM-DB,

13   2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019) (denying plaintiff's motion where allegation

14   seeking "up to thirty days of pay as penalty . . ." supported assumption of 30-days maximum, plus

15   defendant's declarations sufficiently established other variables used in calculations); Avila v.

16   Rue21, Inc. (Rue21), 432 F. Supp. 3d 1175, 1188 (E.D. Cal. 2020) (finding plaintiff's allegation

17   that she and other class members were entitled to recover "up to a thirty (30) day maximum

18   [penalty]. . ." supported defendant's use of 30-day maximum even without supporting evidence,

19   but rejecting other proffered variables using 100% violation rate as unsupported); but see Page v.

20   Luxottica Retail N. Am., Inc., No. 2:13-cv-01333-MCE, 2015 WL 966201, at *5 (E.D. Cal. Mar.

21   4, 2015) ("Plaintiff's complaint alleges that class members may be entitled to penalties for 'up to'

22   the 30–day maximum, not that each class member is entitled to the maximum penalty for all 30

23   days."); Carag v. Barnes & Noble, Inc., No. 2:14-cv-00481-JAM, 2014 WL 2446366, at *3 (E.D.

24   Cal. May 30, 2014) ("Although some courts in this district have accepted tenuous assumptions in

25   the past, the Ninth Circuit and Courts in this district have recently rejected Defendants'

26   assumption of the maximum wage penalty (30 days) for waiting time violations as unsupported

27   by the proper evidence.") (citation and internal quotations omitted); Weston, 2013 WL 5274283,

28   at *6 (discussing Garibay and noting "the Ninth Circuit appears to have disavowed the use of a

30

1    100% violation rate. . ." where such an assumption lacks evidentiary support).

2           Here, Plaintiff argues Defendant's 30-days assumption is unreasonable because it is not

3    supported by the allegations.  In opposition, Defendant points to the allegation that Plaintiff seeks

4    penalties ". . . up to an amount equal to those [daily earnings] owed for 30 days of work" (Compl.

5    ¶ 71) and argues the allegation connotes Plaintiff is seeking the maximum statutory penalty

6    available and it is therefore reasonable to assume the maximum 30 days penalty applies.  The

7    Court finds Plaintiff has the better argument here.  While some courts have construed the "up to"

8    allegation as supporting the assumption that the plaintiff is seeking the maximum penalty, this

9    Court finds Plaintiff's "up to" allegation, when viewed within the context of Plaintiff's other

10   allegations tending to suggest a violation rate of less than a 100%, does not reasonably support

11   Defendant's assumption.  This deficiency in supporting allegations, combined with the absence of

12   evidentiary support for Defendant's assumption, renders the 100% violation rate assumption

13   unreasonable.

14           iv.    Penalty Applied to Every Separated Employee (100% Violation Rate)

15          Finally, as to the fourth assumption, Defendant assumes all members of the separated

16   subclass are entitled to penalties under § 203 (a 100% violation rate).  But as Plaintiff correctly

17   points out, there is no evidence to support this assumption.  That is, even if the Ekstrom

18   declarations were admissible, they do not submit any facts with respect to the number of members

19   of the separated class who were not timely paid wages at separation.  Furthermore, Plaintiff

20   argues the complaint does not allege Defendant failed to timely pay all of its former employees

21   their final wages.  That is, the complaint does not state that every class member whose

22   employment has ended was entitled to wages owed upon termination which they did not receive.

23   Plaintiff additionally argues Defendant's 100% violation rate is unsupported because under

24   California law, waiting time penalties cannot be recovered for meal or rest break violations.

25   (ECF No. 16 at 11 (citing Naranjo v. Spectrum Sec. Servs., Inc., 40 Cal. App. 5th 444, 253 Cal.

26   Rptr. 3d 248 (2019), as modified on denial of reh'g (Oct. 10, 2019)).)[13]  Thus, to the extent the

---

[13] Plaintiff acknowledges and the Court notes the statutory interpretation issue of whether waiting time penalties may be recovered for meal and rest break violations is a matter of first impression that is still pending before the California Supreme Court.  See Naranjo, 455 P.3d 704 (Cal. 2020).

complaint is silent as to whether all separated employees seek recovery for claims other than the unpaid missed meal and rest break wages, it is not reasonably inferable that every single separated employee is seeking (or may recover) waiting time penalties.  Moreover, as previously determined, Plaintiff's "pattern and practice" "regular" and "policy" allegations do not support Defendant's assumption of a 100% violation rate.  Ramirez-Duenas, 2017 WL 1437595, at *3; Castillo, 2020 WL 3819415, at *6; Biag, 2020 WL 4201192, at *6; Holcomb, 424 F. Supp. 3d at 845; Vilitchai, 2017 WL 875595, at *3; Beck, 2016 WL 4769716, at *9; Dobbs, 201 F. Supp. 3d at 1189; Ibarra, 775 F.3d at 1198–99 & n.3; Avila, 2012 WL 12887771, at *3.  Thus, the Court finds Defendant's fourth assumption is not reasonably supported by the language of the complaint.

In sum, the failure to establish sufficient support for any one of the four previously identified assumptions would be fatal to Defendant's waiting time penalties claim calculations.  See Schwarz, 2020 WL 4195778, at *4 (declining to consider waiting period violation damages in determining the amount in controversy where defendant "fail[ed] to carry its burden on two fronts," i.e., defendant's assumptions regarding the average hourly wage and the 100% violation rate).  Here, Defendant has failed to carry its burden with respect to all of the variables.  Accordingly, Defendant has not supported its waiting time penalties calculation by a preponderance of the evidence.

### d.    Attorneys' Fees

"[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met.  The defendant retains the burden, however, of proving the amount of future attorneys' fees by a preponderance of the evidence."  Arias, 936 F.3d at 927 (internal quotation marks and citations omitted).  If the plaintiff is legally entitled to future attorneys' fees if the action succeeds, "then there is no question that future [attorneys' fees] are 'at stake' in the litigation."  Fritsch v. Swift Transp. Co. of Arizona, LLC, 899 F.3d 785, 794 (9th Cir. 2018).  However, "[a] district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy [its] burden of proof."  Id. at 795.

32

1    Defendant contends that the amount in controversy here should include attorneys' fees,

2    which Defendant calculates using a "benchmark" amount of one-third of the subtotal amount.

3    (ECF No. 15 at 17–18 (citing Beaver v. Tarsadia Hotels, No. 11-cv-01842-GPC-KSC, 2017 WL

4    4310707, at *9 (S.D. Cal. Sept. 28, 2017) and Laffitte v. Robert Half Int'l Inc., 376 P.3d 672, 688

5    (Cal. 2016)).)

6    However, the Court need not address whether the attorneys' fees are properly included in

7    evaluating the jurisdictional amount at issue in the instant case.  Given the previous findings, the

8    estimated judgment on which the proposed attorneys' fees figure relies is not supported by

9    sufficient evidence.

10    Further, Defendant relies entirely on a "routine benchmark" and presents no evidentiary

11    support or argument to establish the proposed one-third benchmark is reasonable in the instant

12    case.  See Gipson v. Champion Home Builders, Inc., No. 1:20-cv-00392-DAD-SKO, 2020 WL

13    4048503, at *9 (E.D. Cal. Jul. 20, 2020) ("Consistent with the Ninth Circuit's opinion in Fritsch,

14    the court will not relieve defendant of its evidentiary burden in this regard."); Castillo, 2020 WL

15    3819415, at *9 (same); Rue21, 432 F. Supp. 3d at 1193 (same).  For this reason as well,

16    Defendant has not supported its attorneys' fees calculation by a preponderance of the evidence.[14]

17    4.    Defendant's Request to Submit Supplemental Briefing

18    As a final matter, the Court addresses Defendant's request at the hearing to submit

19    supplemental briefing, if needed, "as in Ibarra."  The Court declines to entertain supplemental

20    briefing.  Unlike Ibarra, which was remanded to the district court on an open record "to give the

21    parties [their] first . . . opportunity to submit evidence as to the statutory threshold," this Court

22    finds Defendant "had an adequate opportunity to place evidence on the record" in opposition to

23

[14] The Court notes Plaintiff raises additional arguments challenging Defendant's attorneys' fees calculations.  For
24    example, Plaintiff argues federal courts employ, if any, a 25% and not 30%  or "one third" benchmark.  Indeed, the
      Court notes the Ninth Circuit has generally set a 25% benchmark for the award of attorneys' fees in common fund
25    cases, and this Court has applied a 25% benchmark on attorneys' fees in prior cases.  See In re Bluetooth Headset
      Products Liability Litigation, 654 F.3d, 935, 942 (9th Cir. 2011); Rodriguez v. M.J. Brothers, Inc., No. 1:18-cv-
26    00252-SAB, 2019 WL 3943856 (E.D. Cal. Aug. 21, 2019).  Plaintiff additionally argues Defendant's fees, which are
      almost entirely based on Defendant's waiting time penalties claim calculation, are unsupported because recovery of
27    attorneys' fees on break and waiting time penalties claims is not permitted under California law.  (See ECF No. 16 at
      14–15 (citing Kirby v. Immoos Fire Protection, Inc., 53 Cal. 4th 1244 (2012)).)  In light of the Court's finding that
28    Defendant's fees calculation lacks evidentiary support, however, the Court does not reach these remaining
      arguments.

1    Plaintiff's motion to remand (which it chose to do in the form of the supplemental Ekstrom

2    declaration).  See Harris, 980 F.3d at 702 (holding district court did not err in granting plaintiff's

3    motion to remand because "further factfinding [was] not required," and distinguishing Ibarra on

4    the basis that the parties at the time of that order were not yet aware, as CAFA litigants are now,

5    of the need to submit additional evidence after the amount in controversy had been contested); see

6    also Lacasse v. USANA Health Scis., Inc., No. 2:20-cv-01186-KJM-AC, 2021 WL 107143, at *3

7    (E.D. Cal. Jan. 12, 2021) (citing Harris, 980 F.3d at 702) (granting remand motion where

8    defendant "had every opportunity to offer evidence [in response to plaintiff's jurisdictional

9    challenge, but] . . . it did not."). Rather, "[b]ecause both parties were afforded the opportunity to

10   place evidence on the record supporting their respective positions as to the amount in

11   controversy," Harris, 980 F.3d at 702, the Court finds remand is appropriate.

12                                               **IV.**

13                              **CONCLUSION AND RECOMMENDATION**

14          Because Defendant has not established that the amount in controversy exceeds $5 million,

15   as required by § 1332(d)(1), the Court has no CAFA jurisdiction over this action.  Because

16   Defendant has not satisfied its burden of establishing removal jurisdiction by a preponderance of

17   the evidence, the Court shall recommend this action be remanded to the Fresno County Superior

18   Court.

19          Accordingly, IT IS HEREBY RECOMMENDED that:

20          1.      Plaintiff's motion to remand (ECF No. 7) be GRANTED; and

21          2.      This action be REMANDED to the Fresno County Superior Court.

22          These findings and recommendations are submitted to the district judge assigned to this

23   action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen**

24   **(14) days** of service of this recommendation, any party may file written objections to these

25   findings and recommendations with the Court and serve a copy on all parties.  Such a document

26   should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The

27   district judge will review the magistrate judge's findings and recommendations pursuant to 28

28   ///

                                                  34

1   U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified

2   time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th

3   Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

4

5   IT IS SO ORDERED.

6   Dated:   __**November 4, 2021**__                      _____
                                                            UNITED STATES MAGISTRATE JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

35